IN RE the COMMITMENT OF Scott R. NELSON:

STATE of Wisconsin, Petitioner-Respondent,

v.

Scott R. NELSON, Respondent-Appellant.†

Court of Appeals

*No. 2005AP810. Submitted on briefs February 6, 2006.
—Decided December 21, 2006.*

2007 WI App 2

(Also reported in 727 N.W.2d 364.)

† Petition to review filed.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Joseph L. Sommers*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Warren D. Weinstein*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Lundsten, P.J., Dykman and Vergeront, JJ.

¶ 1. LUNDSTEN, P.J.   Scott Nelson appeals the circuit court's judgment committing him as a sexually violent person under Wis. Stat. chapter 980 and the

order denying his motion for reconsideration and a new trial. He challenges the recently modified definition of "sexually violent person" under chapter 980 on both substantive due process and equal protection grounds.[1] The new definition lowers the level of dangerousness required for commitment from "substantially probable" to "likely" to engage in an act of sexual violence. We reject Nelson's challenge and affirm the circuit court's judgment and order.[2]

## Background

¶ 2. On April 19, 2004, the State petitioned to have Nelson committed as a sexually violent person under chapter 980. Between the time the State filed the petition and the time the circuit court found Nelson to be a sexually violent person, the definition of sexually violent person in chapter 980 changed. The court found Nelson to be a sexually violent person under the new "likely" standard, and committed him.

## Discussion

¶ 3. Before a person may be committed under chapter 980, the person must be determined to be a "sexually violent person." WIS. STAT. § 980.06. Prior to the passage of 2003 Wis. Act 187, a "sexually violent person" was

a person who has been convicted of a sexually violent offense ... and who is dangerous because he or she suffers from a mental disorder that makes it *substan-*

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] We initially certified this case to the supreme court, but the court did not accept the certification. *See* WIS. STAT. RULE 809.61.

tially probable that the person will engage in acts of sexual violence.

WIS. STAT. § 980.01(7) (2001–02) (emphasis added).

¶ 4.   With the passage of 2003 Wis. Act 187, the legislature changed just two words in this definition. It substituted "likely" for "substantially probable." Thus, the statute now defines a "sexually violent person" as

> a person who has been convicted of a sexually violent offense . . . and who is dangerous because he or she suffers from a mental disorder that makes it *likely* that the person will engage in acts of sexual violence.

WIS. STAT. § 980.01(7) (emphasis added).

¶ 5.   By enacting 2003 Wis. Act 187, the legislature lowered the level of dangerousness required to commit a person under chapter 980. The prior language, "substantially probable," was judicially defined to mean "much more likely than not." *State v. Curiel*, 227 Wis. 2d 389, 401, 597 N.W.2d 697 (1999); *see also State v. Kienitz*, 227 Wis. 2d 423, 434, 597 N.W.2d 712 (1999). The current term, "likely," is statutorily defined to mean "more likely than not." WIS. STAT. § 980.01(1m); *see also State v. Tabor*, 2005 WI App 107, ¶ 5, 282 Wis. 2d 768, 699 N.W.2d 663 (legislature intended "to *change* (and lower)" the standard), *review denied,* 2005 WI 136, 285 Wis. 2d 629, 703 N.W.2d 379 (No. 2004AP1986).

¶ 6.   In sum, the standard has been changed from "much more likely than not" to "more likely than not."

■

¶ 7.   Nelson makes two facial constitutional challenges to the new standard. One is based on substantive due process and the other on equal protection.[3] Both

---

[3] Because Nelson is making facial challenges to the constitutionality of chapter 980, the State's assertion that Nelson has

challenges present questions of law for our *de novo* review. *State v. Wield*, 2003 WI App 179, ¶ 20, 266 Wis. 2d 872, 668 N.W.2d 823.

¶ 8. We presume that all legislative enactments are constitutional, and resolve doubts in favor of the constitutionality of a statute. *State v. Laxton*, 2002 WI 82, ¶ 8, 254 Wis. 2d 185, 647 N.W.2d 784. The challenger bears the burden of proving the statute unconstitutional beyond a reasonable doubt. *Id.* A facial constitutional challenge to a statute "is an uphill endeavor." *State v. Dennis H.*, 2002 WI 104, ¶ 5, 255 Wis. 2d 359, 647 N.W.2d 851.

*Substantive Due Process*

¶ 9. Strict scrutiny review applies to Nelson's substantive due process challenge. *State v. Post*, 197 Wis. 2d 279, 302, 541 N.W.2d 115 (1995). Nelson does not dispute that the State has a "compelling interest in protecting society by preventing future acts of sexual violence through the commitment and treatment of those identified as most likely to commit such acts." *Id.*

waived his constitutional arguments lacks merit. *See State v. Bush*, 2005 WI 103, ¶ 19, 283 Wis. 2d 90, 699 N.W.2d 80 ("[B]ecause Bush has facially challenged the constitutionality of chapter 980, his challenge goes to the subject matter jurisdiction of the court [and] . . . cannot be waived . . . ."), *cert. denied,* 126 S. Ct. 631 (2005).

Nelson initially argued in this appeal that the new definition of sexually violent person could not be applied to him retroactively. However, Nelson now concedes that his retroactivity argument is untenable under *State v. Tabor*, 2005 WI App 107, 282 Wis. 2d 768, 699 N.W.2d 663, *review denied,* 2005 WI 136, 285 Wis. 2d 629, 703 N.W.2d 379 (No. 2004AP1986).

at 294. His argument is that the change in chapter 980 from "substantially probable" to "likely" violates substantive due process because the lower standard of commitment is not narrowly tailored to address the compelling state interest behind chapter 980. We reject Nelson's argument for the reasons that follow.

¶ 10.   Wisconsin case law has discussed, or at least referenced, the "substantially probable" standard in upholding chapter 980 against substantive due process or other constitutional challenges. *See Laxton*, 254 Wis. 2d 185, ¶¶ 11, 22–23, 27, 30; *Curiel*, 227 Wis. 2d at 413–15; *Post*, 197 Wis. 2d at 311–12 n.17. That case law does not, however, decide the question that Nelson's argument raises:   whether the "substantially probable" standard is the minimum necessary to comport with substantive due process. We find the United States Supreme Court's decisions in *Kansas v. Hendricks*, 521 U.S. 346 (1997), and *Kansas v. Crane* 534 U.S. 407 (2002), to be a useful starting point in analyzing this question.

¶ 11.   In *Hendricks*, the Court upheld the Kansas sexually violent persons law in the face of a substantive due process challenge. *See Hendricks*, 521 U.S. at 350, 371. The Kansas law required that the person being committed " 'suffers from a mental abnormality or personality disorder which makes the person *likely* to engage in the predatory acts of sexual violence.' " *Id.* at 352 (quoting KAN. STAT. ANN. § 59–29a02(a); emphasis added). Although the *Hendricks* Court did not squarely address the issue before us, the Court did explain that the Kansas statute is narrowly drawn because it "requires proof of more than a mere predisposition to violence; rather, it requires evidence of past sexually violent behavior and a present mental condition that creates a *likelihood* of such conduct in the future if the

459

person is not incapacitated." *Hendricks*, 521 U.S. at 357 (emphasis added).[4] Thus, *Hendricks* is consistent with the proposition that the "likely" standard is sufficient to satisfy substantive due process requirements.

¶ 12.  In *Crane*, the Court again addressed the Kansas law and sought to clarify certain aspects of its decision in *Hendricks. See Crane*, 534 U.S. at 409–15. The Court concluded that *Hendricks* mandated "proof of serious difficulty in controlling behavior." *Crane*, 534 U.S. at 413. The Court further explained that such proof, "when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Id.*

¶ 13.  Our supreme court in *Laxton* explained that, under *Crane*, "the focus is on the nexus between the mental abnormality and the level of dangerousness, and whether those requirements are sufficient to distinguish a dangerous sexual offender from the dangerous but typical recidivist." *Laxton*, 254 Wis. 2d 185, ¶ 15; *see also Post*, 197 Wis. 2d at 307 ("[T]he focal point of commitment is . . . on current diagnosis of a present disorder suffered by an individual that specifically causes that person to be prone to commit sexually violent acts in the future."). Thus, "*Crane* holds that there must be proof of a mental disorder and a link

------

[4] The Kansas statute defines "likely" as meaning that "the person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." KAN. STAT. ANN. § 59–29a02(c).

between the mental disorder and the individual's lack of control." *Laxton*, 254 Wis. 2d 185, ¶ 21.

¶ 14.  In short, under *Crane*, the key to the constitutionality of chapter 980, at least for purposes of substantive due process, is that there exists a sufficient link between the person's mental disorder and the person's level of dangerousness, and that this link is sufficient to distinguish the person from the "dangerous but typical recidivist."[5]

¶ 15.  Although Nelson's substantive due process argument is not fully developed, his principal assertion seems to be that the "more likely than not" standard of dangerousness is insufficient under *Crane* and, therefore, not narrowly tailored. Nelson contends that proof that a person is "more likely than not" to commit a future act of sexual violence is insufficient to show that the person's mental disorder involves "serious difficulty" in controlling sexually violent behavior, as re-

---

[5] We are mindful that in *State v. Laxton*, 2002 WI 82, 254 Wis. 2d 185, 647 N.W.2d 784, our supreme court said the following:

> It is settled law that "substantially probable" means "much more likely than not." *State v. Curiel*, 227 Wis. 2d 389, 406, 597 N.W.2d 697 (1999). Thus, proof that due to a mental disorder it is substantially probable that the person will engage in acts of sexual violence necessarily and implicitly includes proof that such person's mental disorder involves serious difficulty in controlling his or her sexually dangerous behavior. Chapter 980, therefore, satisfies due process requirements.

*Id.*, ¶ 23. When read in context, it is plain that the focus of this discussion in *Laxton* is on whether the "substantially probable" standard necessarily and implicitly required proof of serious difficulty in controlling behavior, as required by *Kansas v. Crane*, 534 U.S. 407 (2002). There is no reason to think the *Laxton* court was suggesting that a standard lower than "substantially probable" would not suffice.

quired by *Hendricks* and *Crane*. But Nelson presents no reason to think that the legislature's use of "more likely than not," as opposed to "much more likely than not," breaks the crucial link between disorder and dangerousness. Even under the "more likely than not" standard, there must be a strong nexus between the person's mental disorder and that person's level of dangerousness. Under this standard, the likelihood that the person will engage in an act of sexual violence is more than 50%.[6]

---

[6] Many courts have found sexually violent person statutes utilizing a "likely" standard to be constitutionally sufficient, although the courts we have identified did not specifically address what level of likelihood is required by substantive due process. *See Westerheide v. State*, 831 So. 2d 93, 106–09 (Fla. 2002) (statutory standards requiring proof of more than a "mere predisposition" to violence but rather requiring evidence of past sexually violent behavior and a present·mental condition that creates a "likelihood" of such conduct in the future met requirements of both *Kansas v. Hendricks*, 521 U.S. 346 (1997), and *Crane*, 534 U.S. 407); *People v. Kastman*, 779 N.E.2d 333, 345 (Ill. App. Ct. 2002) (expert testimony that person's mental disorder affected volitional capacity to the extent that the person is likely to reoffend is sufficient to support a finding of serious difficulty in controlling behavior); *In re Care and Treatment of Ward*, 131 P.3d 540, 547–49 (Kan. Ct. App. 2006) (use of "likely" standard in Kansas statute is consistent with due process and approved by *Hendricks* and *Crane*); *Van Grinsven v. G.R.H.*, 711 N.W.2d 587, 594 (N.D. 2006) (the requisite disorder or dysfunction must make the individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others); *In re Treatment and Care of Luckabaugh*, 568 S.E.2d 338, 349 (S.C. 2002) (South Carolina's sexually violent predator act, which requires that a person suffers from a mental abnormality or personality disorder that makes the person "likely" to engage in acts of sexual violence, comports with *Crane*); *see also Martin v. Reinstein*, 987 P.2d 779, 800–01 (Ariz. Ct. App. 1999) (reasoning

¶ 16. The principal purposes behind chapter 980 are "the protection of the public and the treatment of convicted sex offenders who are at a high risk to reoffend in order to reduce the likelihood that they will engage in such conduct in the future." *State v. Carpenter*, 197 Wis. 2d 252, 271, 541 N.W.2d 105 (1995). We recently said in *Tabor* that "the legislature may modify the threshold for dangerousness so long as the applicable criteria remain relevant to ch. 980's underlying purposes of both protecting society and providing needed treatment to persons whose mental disorder makes them dangerous." *Tabor*, 282 Wis. 2d 768, ¶ 5. Nelson provides no persuasive explanation for why these purposes are not well served by the "more likely than not" standard. *Cf. Hendricks*, 521 U.S. at 360 n.3 ("[W]hen a legislature 'undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious not to rewrite legislation.' " (citation omitted)).

---

that Arizona's sexually violent person law withstood substantive due process scrutiny because the "likely" standard in the Arizona law demanded something more than a mere "possibility" of dangerousness); *cf. State v. Ehrlich (In re Leon G.)*, 59 P.3d 779, 781, 783, 786–87, 789 (Ariz. 2002) (holding that "likely" standard in Arizona sexually violent person statute comports with *Hendricks* and *Crane*, but defining "likely" as "highly probable"); *In re Detention of Thorell*, 72 P.3d 708, 719 (Wash. 2003) (following *Leon G.* and upholding jury instruction based on statute that used "likely" standard); *but see Thomas v. State*, 74 S.W.3d 789, 791–92 (Mo. 2002) (holding that "more likely than not" standard was insufficient because it does not require juries to distinguish between the dangerous sexual offender whose mental illness, abnormality, or disorder subjects him to civil commitment and the dangerous but typical recidivist).

¶ 17. Citing *Curiel*, Nelson asserts that "[t]he fact is, the prior . . . standard of 'substantially probable' fueled considerable litigation that was not resolved until the Wisconsin Supreme Court defined the terms as 'much more likely than not.'" But Nelson fails to explain how this assertion supports his argument that changing "much more likely than not" to "more likely than not" undercuts chapter 980's constitutionality. From *Curiel*, it appears that the "considerable litigation" to which Nelson refers arose not from disputes over whether the "substantially probable" standard was sufficiently restrictive, but from disagreement over the meaning of that standard, a disagreement the *Curiel* court definitively resolved. *See Curiel*, 227 Wis. 2d at 412 (explaining that the phrase "substantial probability" has "created difficulties: in this case, the three experts offered three different personal working definitions; the court of appeals in this case, and the court of appeals in *Kienitz*, contributed two additional definitions").

¶ 18. In sum, we discern no reason why the "more likely than not" standard is not sufficiently narrowly tailored to achieve the State's compelling interest in protecting society by preventing acts of sexual violence through the commitment and treatment of those identified as most prone to commit such acts. Certainly none of Nelson's substantive due process arguments persuade us beyond a reasonable doubt that chapter 980, as amended by 2003 Wis. Act 187, is unconstitutional.

*Equal Protection*

¶ 19. We turn to Nelson's equal protection argument. A party challenging a statute on equal protection grounds must "demonstrate that the state unconstitu-

tionally treats members of similarly situated classes differently." *Post*, 197 Wis. 2d at 318. In *Post*, the court said that "persons committed under chapters 51 and 980 are similarly situated for purposes of an equal protection comparison." *Id.* at 318–19.

¶ 20. The gist of Nelson's equal protection argument is contained in the following quote from his brief:

> 2003 WI Act 187 violates equal protection, a conclusion dictated by the holding in *Curiel* where the court noted that equal protection existed for subjects of Ch. 980 and Ch. 51 because both chapters employed a "substantial probability standard." And the "substantial probability standard" no longer applies to Ch. 980. Therefore there can be no way around the conclusion that the similarly situated subjects of Ch. 51 and Ch. 980 are now no longer being afforded similar treatment.

Thus, according to Nelson, *Curiel* stands for the proposition that equal protection exists for subjects of chapter 980 *only* so long as chapter 980 employs the "substantial probability" standard used in Wis. Stat. chapter 51. We disagree.[7]

---

[7] Nelson does not address the level of scrutiny that he thinks should apply to his equal protection claim. The State, in responding to Nelson's claim, asserts that the "level of scrutiny used to analyze civil commitment schemes is unclear." In *State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (1995), the court declined to resolve the question of what level of scrutiny should apply in the face of an equal protection challenge to chapter 980 when the comparison class was persons subject to chapter 51. *Post*, 197 Wis. 2d at 321. In *State v. Burgess*, 2003 WI 71, ¶¶ 31–33, 262 Wis. 2d 354, 665 N.W.2d 124, the court seemed to assume that rational basis review applied. We need not resolve the question of what level of scrutiny should apply to Nelson's equal protection argument because our rejection of Nelson's argument does not depend on the level of scrutiny.

¶ 21. The relevant language from *Curiel* is as follows:

> [Curiel] claims a single substantive difference between the statutory schemes for commitment under ch. 51 and ch. 980: satisfying the standard of dangerousness requires the State prove to a greater likelihood the probability that a person will harm himself, herself, or another under ch. 51 than is required to prove that a person will sexually reoffend under ch. 980.
>
> . . . .
>
> . . . Curiel's equal protection challenge fails because Curiel has not demonstrated that persons committed under ch. 51 are treated differently than persons committed under ch. 980.
>
> . . . Both ch. 980 and ch. 51 employ a "substantial probability" standard. We held that the term "substantially probable" as used in ch. 980 means "much more likely than not." As the terms are to be used in a consistent manner between the chapters, we can conceive of no reason why the term as used in ch. 51 should be construed any differently than it is under ch. 980.

*Curiel*, 227 Wis. 2d at 413–14. Thus, the *Curiel* court rejected Curiel's equal protection argument because it saw no difference between chapter 980 and chapter 51 with respect to the standard on which Curiel's argument rested. That is not the same as a holding that the standard *must* be identical in both chapter 980 and chapter 51 in order to satisfy equal protection. Indeed, the court recognized in *Curiel* that equal protection requires only that those similarly situated "be accorded *similar* treatment," not that they be "dealt with *identically*." *Curiel*, 227 Wis. 2d at 413 (emphasis added).

466

¶ 22. Persons committed under chapter 980 and persons committed under chapter 51 may be similarly situated, *see Post*, 197 Wis. 2d at 318–19, but they are not identically situated. The *Post* court explained:

> The legislature has determined that, as a class, persons predisposed to sexual violence are more likely to pose a higher level of danger to the community than do other classes of mentally ill or mentally disabled persons. This heightened level of dangerousness and the unique treatment needs of sexually violent persons justify distinct legislative approaches to further the compelling governmental purpose of protection of the public.

*Id.* at 322–23; *accord State v. Burgess*, 2003 WI 71, ¶ 33, 262 Wis. 2d 354, 665 N.W.2d 124. It follows that the standard we discuss today must be "similar" to that in chapter 51, but need not be identical. In light of the above discussion in *Post,* which was reaffirmed in *Burgess*, we are not persuaded that chapter 980 must contain the identical "substantially probable" standard as chapter 51 in order to comport with equal protection principles. Nelson's limited argument does not demonstrate, beyond a reasonable doubt, that chapter 980, as amended by 2003 Wis. Act 187, is unconstitutional on equal protection grounds.

*By the Court.*—Judgment and order affirmed.