IN RE the COMMITMENT OF Thornon F. TALLEY:

STATE of Wisconsin, Petitioner-Respondent,

v.

Thornon F. TALLEY, Respondent-Appellant.†

Court of Appeals

*No. 2013AP492. Submitted on briefs October 8, 2014.
—Decided December 4, 2014.*

2015 WI App 4

(Also reported in 859 N.W.2d 155.)

† Petition for Review filed.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *David R. Karpe* of *Karpe Law Office*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the briefs of *Daniel J. O'Brien*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Lundsten, Higginbotham and Sherman, JJ.

¶ 1. LUNDSTEN, J.   Thornon Talley appeals the circuit court's order continuing his WIS. STAT. ch. 980 commitment after he unsuccessfully petitioned for discharge from the commitment. He also appeals an order denying his motion for post-commitment relief. Talley challenges WIS. STAT. § 980.09(3) as facially unconstitutional because it denies due process. More specifically, Talley argues that the statute is defective because it requires only clear and convincing evidence instead of proof beyond a reasonable doubt. The State disagrees,

and additionally argues that Talley forfeited his facial challenge by failing to raise that challenge at his discharge trial.[1]

¶ 2.  We decline to rely on the State's forfeiture argument, observing that this argument seems difficult to reconcile with our supreme court's decision in *State v. Bush*, 2005 WI 103, 283 Wis. 2d 90, 699 N.W.2d 80. In *Bush*, the court held that "a facial [constitutional] challenge is a matter of subject matter jurisdiction and cannot be waived." *Id.*, ¶ 17. Ultimately we assume, without deciding, that Talley did not forfeit his facial challenge to WIS. STAT. § 980.09(3). Proceeding to the merits, we reject Talley's challenge because we conclude that, under *Addington v. Texas*, 441 U.S. 418 (1979), the clear and convincing evidence standard satisfies due process at a WIS. STAT. ch. 980 discharge trial.

### *Background*

¶ 3.  Talley was committed as a sexually violent person under WIS. STAT. ch. 980 in 2005. He petitioned for discharge in June 2011, alleging that he no longer met the commitment criteria.

¶ 4.  WISCONSIN STAT. ch. 980 provides that, at an initial commitment trial, the State must prove the applicable commitment criteria beyond a reasonable doubt. *See* WIS. STAT. § 980.05(3)(a). However, as we

---

[1] The pertinent statutory provisions, but not the respective burdens of proof, have changed since the time of Talley's 2005 initial commitment under WIS. STAT. ch. 980. *Compare* WIS. STAT. §§ 980.05(3)(a) and 980.09(1)(b) and (2)(b) (2003–04) *with* WIS. STAT. §§ 980.05(3)(a) and 980.09(3) (2011–12). Neither party argues that those changes are material here. For ease of reference, we will generally refer to the 2011–12 version of the statutes.

have indicated, at a discharge trial the standard of proof is clear and convincing evidence. *See* Wis. Stat. § 980.09(3).

¶ 5.　At Talley's trial on his petition for discharge, the circuit court instructed the jury on the clear and convincing evidence standard in accordance with Wis. Stat. § 980.09(3). The jury found that Talley continued to meet the commitment criteria, and the circuit court entered an order continuing Talley's commitment.

¶ 6.　Talley filed a post-commitment motion arguing that the clear and convincing evidence standard in Wis. Stat. § 980.09(3) is unconstitutional because it deprives individuals committed under Wis. Stat. ch. 980 of the right to due process. The circuit court rejected Talley's challenge on the merits, and denied Talley's motion.[2]

### *Discussion*

¶ 7.　Talley argues, as he did in his post-commitment motion, that Wis. Stat. § 980.09(3) is facially unconstitutional because it deprives individuals committed under Wis. Stat. ch. 980 of the right to due process. The State disagrees, and additionally argues as a preliminary matter that Talley forfeited his constitutional challenge to § 980.09(3) by failing to raise that challenge at his discharge trial. We decline to rely on the State's forfeiture argument, but we agree with the circuit court and the State that Talley's due process challenge fails on its merits.

---

[2] Judge Sarah B. O'Brien issued the order continuing Talley's commitment. Judge C. William Foust issued the order denying Talley's motion for post-commitment relief.

## A. State's Forfeiture Argument

¶ 8. We begin with the State's forfeiture argument. Talley does not dispute that he failed to raise his challenge at his discharge trial, but argues that a facial challenge to a statute cannot be forfeited under the supreme court's decision in *Bush*, 283 Wis. 2d 90.

¶ 9. Although we decline to rely on the State's forfeiture argument, we choose to comment on it. While we have difficulty seeing how the State's forfeiture argument can be reconciled with *Bush*, there seem to be persuasive policy reasons to apply forfeiture here.

¶ 10. Those reasons include that, if Talley had raised his constitutional challenge at his discharge trial, and the circuit court had agreed with Talley, it appears that the circuit court could have efficiently remedied the situation by instructing the jury on the beyond a reasonable doubt standard. *See State v. Post*, 197 Wis. 2d 279, 328–29, 541 N.W.2d 115 (1995) (observing that the court "has previously construed deficient statutes to include constitutionally required procedures," and construing a prior version of Wis. Stat. ch. 980 to include the right to a jury trial even though ch. 980 did not provide for it). Moreover, as the State points out, applying the forfeiture rule in situations like the one here prevents "sandbagging." That is, it prevents a litigant from strategically withholding a constitutional objection and then, if unhappy with the outcome at trial, raising the objection afterward in hopes of obtaining a reversal. In short, it appears that the policy reasons underlying forfeiture apply here. Requiring a timely objection would seem to "promote both efficiency and fairness." *See State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999).

¶ 11. As we have said, however, the supreme court in *Bush* held that "a facial challenge is a matter of subject matter jurisdiction and cannot be waived." *Bush*, 283 Wis. 2d 90, ¶ 17.[3] More specifically, *Bush* involved a challenge to Wis. Stat. ch. 980 as violating due process by not requiring a finding of a recent overt act. *See Bush*, 283 Wis. 2d 90, ¶¶ 13, 21. The State argued there that Bush's challenge came too late because Bush did not raise the challenge in two prior appeals. *Id.*, ¶ 11. The court rejected the State's argument, explaining, in pertinent part:

> In both *State v. Cole*, 2003 WI 112, ¶ 46, 264 Wis. 2d 520, 665 N.W.2d 328, and *Trochinski*, 253 Wis. 2d 38, ¶ 34 n.15, this court concluded that while an "as applied" challenge to the constitutionality of a statute may be waived, a facial challenge is a matter of subject matter jurisdiction and cannot be waived . . . . If a statute is unconstitutional on its face, any action premised upon that statute fails to present any civil or criminal matter in the first instance. As the court of appeals correctly noted in *Skinkis*, if the facial attack on the statute were correct, the statute would be null and void, and the court would be without the power to act under the statute. *Skinkis*, 90 Wis. 2d at 538 . . . .
>
> . . . .
>
> We conclude that because Bush has facially challenged the constitutionality of chapter 980, his chal-

---

[3] The supreme court decided *State v. Bush*, 2005 WI 103, 283 Wis. 2d 90, 699 N.W.2d 80, before the court clarified the difference between forfeiture and waiver in *State v. Ndina*, 2009 WI 21, 315 Wis. 2d 653, 761 N.W.2d 612. The court in *Ndina* explained that, " '[w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.' " *Id.*, ¶ 29 (quoted source omitted). As our discussion in the text above will show, it is now apparent that the question in *Bush* was one of forfeiture, not waiver.

lenge goes to the subject matter jurisdiction of the court. Therefore, because challenges to subject matter jurisdiction cannot be waived, we reach the merits of his claim.

*Id.*, ¶¶ 17, 19; *see also State v. Nelson*, 2007 WI App 2, ¶ 7 n.3, 298 Wis. 2d 453, 727 N.W.2d 364 (WI App 2006) (relying on *Bush* and concluding that, "Because Nelson is making facial challenges to the constitutionality of chapter 980, the State's assertion that Nelson has waived his constitutional arguments lacks merit.").

¶ 12.  The State argues that *Bush* is distinguishable, seemingly suggesting that the facial problem alleged in that case could not be corrected in response to a timely objection and, therefore, the policy reasons underlying the forfeiture rule were not present in *Bush*. Another asserted distinction the State identifies is that Talley, unlike Bush, is not challenging the court's subject matter jurisdiction because Talley invoked the court's jurisdiction by initiating the discharge process and because Talley's constitutional challenge is merely "procedural." However, the State's arguments, at best, amount to reasons why the supreme court should not have used sweeping forfeiture language; those arguments do not persuade us that we are not bound by the *Bush* court's seemingly unequivocal statement that "a facial challenge is a matter of subject matter jurisdiction and cannot be waived." *See Bush*, 283 Wis. 2d 90, ¶ 17.

¶ 13.  The State also seems to argue that Talley's challenge is not actually a facial challenge. However, the State fails to supply any legal authority or coherent reasoning to support that argument. Talley is plainly arguing that WIS. STAT. § 980.09(3) can never be constitutionally applied as written; he is not simply arguing that the statute is unconstitutional only as applied to

him or to a subset of individuals, or only under particular circumstances. *See State v. Konrath*, 218 Wis. 2d 290, 304 n.13, 577 N.W.2d 601 (1998) (" 'If a court holds a statute unconstitutional on its face, the state may not enforce it under any circumstances, unless an appropriate court narrows its application; in contrast, when a court holds a statute unconstitutional as applied to particular facts, the state may enforce the statute in different circumstances.' " (quoted source omitted)).

¶ 14. Finally, the State relies on the supreme court's decision in *Milwaukee County v. Mary F.-R.*, 2013 WI 92, 351 Wis. 2d 273, 839 N.W.2d 581. The State argues that, even assuming Talley's challenge is a facial one, *Mary F.-R.* shows that a challenge like Talley's can be forfeited. We disagree. *Mary F.-R.* does not modify *Bush* and does not otherwise support the State's forfeiture argument.[4]

¶ 15. *Mary F.-R.* involved a facial constitutional challenge to the six-person jury provision in the general civil commitment statutes, WIS. STAT. ch. 51. *Mary F.-R.*, 351 Wis. 2d 273, ¶¶ 1, 31. The county there argued that Mary F.-R. forfeited her challenge and that *Bush* was distinguishable because Mary F.-R. was not challenging the "entirety" of ch. 51. *Mary F.-R.*, 351 Wis. 2d 273, ¶ 33. The supreme court assumed, without deciding, that there was no forfeiture, and expressly declined to revisit its holding in *Bush*:

Mary F.-R. contends that she did not forfeit her ability to facially challenge Wis. Stat. § 51.20(11) because under *State v. Bush*, 2005 WI 103, ¶ 17, 283 Wis. 2d 90, 699 N.W.2d 80, a facial challenge to the

---

[4] The parties filed supplemental briefs addressing *Milwaukee County v. Mary F.-R.*, 2013 WI 92, 351 Wis. 2d 273, 839 N.W.2d 581.

constitutionality of a statute goes to the subject matter jurisdiction of the court and "cannot be waived."

In *State v. Bush,* we addressed the procedural question of whether the defendant in that case forfeited his ability to bring a facial challenge to the constitutionality of Chapter 980 when he failed to raise the constitutional issue in either of his appeals following his initial commitment. *Bush,* 283 Wis. 2d 90, ¶ 14. In holding that the defendant did not forfeit his challenge to the constitutionality of Chapter 980, we said "that while an 'as applied' challenge to the constitutionality of a statute may be waived, a facial challenge is a matter of subject matter jurisdiction and cannot be waived." *Id.,* ¶ 17 (citing *State v. Cole,* 2003 WI 112, ¶ 46, 264 Wis. 2d 520, 665 N.W.2d 328 and *State v. Trochinski,* 2002 WI 56, ¶ 34 n.15, 253 Wis. 2d 38, 644 N.W.2d 891).

Milwaukee County argues that *Bush* is inapplicable to this case since Mary F.-R. does not challenge the entirety of Chapter 51 or the essential purpose of the chapter as was the case in *Bush.*

We decline the parties' invitation to address our holding in *Bush.* Instead we reach the merits of Mary F.-R.'s equal protection challenge by assuming, without deciding, that she did not forfeit her challenge when she failed to make a contemporaneous objection at the time the circuit court empaneled the six-person jury.

*Mary F.-R.,* 351 Wis. 2d 273, ¶¶ 31–34 (footnote omitted).

¶ 16. We acknowledge, as the State points out, that a three-justice concurrence in *Mary F.-R.* disagreed with the majority's refusal to address *Bush,* and that the concurrence concluded that "*Bush* does not stand for the proposition that every facial challenge to any one procedural statute necessarily impacts the subject matter jurisdiction of the court." *See Mary F.-R.,* 351

Wis. 2d 273, ¶¶ 70–72, 76–77 (Ziegler, J., concurring). But, obviously, we are bound by *Bush* and the *Mary F.-R.* majority, not by the *Mary F.-R.* concurrence. We see nothing in the majority opinion in *Mary F.-R.* that modifies *Bush* or that otherwise supports the State's forfeiture argument here.

¶ 17. In sum, even though there are persuasive policy reasons to apply forfeiture here, we decline to rely on the State's forfeiture argument because we have difficulty reconciling that argument with *Bush*. Rather, we assume without deciding that Talley did not forfeit his facial challenge, and we proceed to the merits.

*B. Merits Of Talley's Facial Due Process Challenge To Wis. Stat. § 980.09(3)*

¶ 18. Talley argues that Wis. Stat. § 980.09(3) is facially unconstitutional because individuals committed under Wis. Stat. ch. 980 have a due process right to the beyond a reasonable doubt standard of proof at discharge trials. The constitutionality of a statute is a question of law that we review de novo. *State v. West*, 2011 WI 83, ¶ 22, 336 Wis. 2d 578, 800 N.W.2d 929. Statutes are presumed to be constitutional, and a party challenging a statute's constitutionality must demonstrate that the statute is unconstitutional beyond a reasonable doubt. *Id.*

¶ 19. As we have indicated, the standard of proof for an *initial* commitment trial is the beyond a reasonable doubt standard, *see* Wis. Stat. § 980.05(3)(a), but the standard at a *subsequent* discharge trial is the clear and convincing evidence standard, *see* Wis. Stat. § 980.09(3). We stress at the outset that Talley makes only a due process challenge, not an equal protection

challenge. On the topic of due process, the precedent most directly on point is *Addington*, 441 U.S. 418.

¶ 20.  In *Addington*, the Supreme Court addressed the standard of proof that due process requires for civil commitment. *See id.* at 419–20, 425, 427, 432–33. The Court recognized that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Id.* at 425. The Court concluded that, in civil commitments, the "middle level" "clear and convincing" evidence burden of proof "strikes a fair balance between the rights of the individual and the legitimate concerns of the state." *Id.* at 431–33. The Court rejected the argument that due process required application of the beyond a reasonable doubt standard. *Id.* at 427–28, 431.

¶ 21.  We acknowledge that *Addington* is not directly on point for two reasons:   (1) *Addington* did not involve a sexually violent person commitment; and (2) *Addington* did not involve a decision whether to continue or end an existing commitment. However, as we discuss further below, Talley does not persuade us that either difference matters here. Nor does Talley make any other developed argument that persuades us.

### 1. First Addington Difference—Addington Did Not Involve A Sexually Violent Person Commitment

¶ 22.  As to the first difference, Talley's argument is so lacking in development that we are unable to cogently summarize it. Regardless, we conclude without difficulty that *Addington* applies to sexually violent person commitments.

¶ 23.  WISCONSIN STAT. ch. 980 commitments are, of course, a subset of civil commitments. *See State v. Rachel*, 2002 WI 81, ¶ 61, 254 Wis. 2d 215, 647 N.W.2d

762. In keeping with that, our supreme court has repeatedly cited *Addington* when addressing other constitutional challenges to ch. 980. *See Bush*, 283 Wis. 2d 90, ¶ 13; *Rachel*, 254 Wis. 2d 215, ¶ 61 ("Civil commitment, such is at issue here, constitutes a deprivation of liberty that is subject to due process protection. *Addington v. Texas*, 441 U.S. 418, 425 (1979)."); *Post*, 197 Wis. 2d at 302–04 & n.11, 326.

¶ 24. It is true that individuals committed under WIS. STAT. ch. 980 face greater liberty restrictions as a class than those committed under the general civil commitment statutes, WIS. STAT. ch. 51. *Mary F.-R.*, 351 Wis. 2d 273, ¶¶ 47–48. However, it is also true that individuals committed under ch. 980 are deemed more dangerous as a class than those committed under ch. 51. *Post*, 197 Wis. 2d at 322. Thus, we think that the balance the *Addington* Court struck between "the rights of the individual and the legitimate concerns of the state" in civil commitments more generally is essentially the same as the balance to be struck for sexually violent person commitments. *See Addington*, 441 U.S. at 431.

¶ 25. As the State points out, courts in a number of other jurisdictions have applied *Addington* to conclude that the clear and convincing evidence standard satisfies due process in sexually violent person commitments. *See Westerheide v. State*, 831 So. 2d 93, 97, 109–10 (Fla. 2002); *In re Detention of Samuelson*, 727 N.E.2d 228, 231, 237 (Ill. 2000); *State v. Golston*, 67 So. 3d 452, 454–55, 464 (La. 2011); *Commonwealth v. Knapp*, 804 N.E.2d 885, 887, 893 & n.14 (Mass. 2004); *People v. Williams*, 580 N.W.2d 438, 439–40, 442 (Mich. Ct. App. 1998); *In re Van Orden*, 271 S.W.3d 579, 581, 584–86 (Mo. 2008); *State v. Harris*, 463 N.W.2d 829, 831, 834–35 (Neb. 1990); *State v. Ploof*, 34 A.3d 563, 567,

533

573–75 (N.H. 2011); *State v. Farnsworth*, 75 A.D.3d 14, 900 N.Y.S.2d 548, 550, 555, 556–59 (N.Y. App. Div. 2010); *Commonwealth v. Maldonado*, 838 A.2d 710, 711, 714–18 (Pa. 2003); *Shivaee v. Commonwealth*, 613 S.E.2d 570, 572–73, 578 (Va. 2005); *J.J.F. v. State*, 132 P.3d 170, 172, 178 (Wyo. 2006).

¶ 26. Talley points to no case from another jurisdiction holding to the contrary, and we are aware of none.[5] If Talley means to suggest that our supreme court in *Post* held that due process requires the reasonable doubt standard for WIS. STAT. ch. 980 commitments, we disagree.

¶ 27. Talley fails to make clear what language in *Post* he relies on, but he appears to rely on the following passage, in which the court was addressing an *equal protection* challenge when comparing WIS. STAT. ch. 980 to WIS. STAT. ch. 51:

> Post and Oldakowski argue that equal protection is violated by the chapter 980 procedures that make release more difficult than the parallel provisions in chapter 51. The State counters that procedures need not be identical and that the procedural safeguards applied at the stage of initial commitment are actually much more stringent than those in chapter 51, thereby

---

[5] One noteworthy case involves a different situation—a commitment law that, unlike Wisconsin's law, requires prior sexually violent *conduct* but not a *conviction* for that conduct. *See United States v. Shields*, 522 F. Supp. 2d 317, 330–31 (D. Mass. 2007) (concluding that due process required that the allegation of prior sexually violent conduct be shown by proof beyond a reasonable doubt, but further concluding that, under *Addington v. Texas*, 441 U.S. 418 (1979), the allegation that a person is sexually dangerous to others need be proven only by clear and convincing evidence). It is apparent that the absence of a conviction requirement may raise additional due process concerns that are not present here.

reducing the risk of erroneous commitment and lessening the need for the type of release procedures that the legislature chose to employ for chapter 51 committed persons. We find the State's arguments persuasive and agree that most of the differences between the two statutory schemes are justified by the state's compelling interest in the protection of the public from those who are dangerous due to a mental disorder which creates a substantial probability of future acts of sexual violence.

The Supreme Court has recognized that a proper "function of [the] legal process is to minimize the risk of erroneous decisions" and cautioned that, "[t]he individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Addington,* 441 U.S. at 425, 427. Loss of liberty through involuntary commitment imposes just such a heavy duty upon the state. Chapter 980 properly balances the risks by providing stringent procedural safeguards on the initial commitment process. At the commitment trial, the subject of the petition is afforded all of the rights available to a defendant in a criminal trial. Wis. Stat. § 980.05(1m). A person can be committed under chapter 980 only if a jury unanimously finds that all of the criteria in the petition are met beyond a reasonable doubt. Wis. Stat. § 980.03(3). This is contrasted with chapter 51, under which the state need only prove the substantive criteria by clear and convincing evidence and which allows commitment on a 5/6ths jury verdict. Wis. Stat. §§ 51.20(11) and (13)(e). The increased likelihood of accurate initial 980 commitment decisions reduces the need for some of the recommitment procedures that act as a safety net in chapter 51.

*Post,* 197 Wis. 2d at 325–26.

¶ 28. Contrary to Talley's apparent argument, we do not read this passage from *Post* as stating that *Addington* and *due process* require the reasonable doubt standard for commitments under WIS. STAT. ch. 980. Instead, the court in *Post* was explaining that the reasonable doubt standard for initial commitments under ch. 980 helped save ch. 980 from being unconstitutional *on equal protection grounds* when compared with WIS. STAT. ch. 51.

### 2. Second Addington Difference—Addington Did Not Involve Continuation Of An Existing Commitment

¶ 29. We turn to the second difference between *Addington* and the facts at hand, namely, that *Addington* addressed an *initial* commitment decision instead of a discharge decision, that is, the decision on whether an existing commitment continues or ends. On its face, this difference appears to cut against Talley, if it matters at all. That is, if the lower burden is sufficient to satisfy due process at an initial commitment, it surely is sufficient for continuing a commitment.

¶ 30. Talley's argument to the contrary seems to be that the Wisconsin legislature upped the due process ante for discharge decisions by imposing a higher burden than what *Addington* requires for initial commitments. This argument has it backwards. If anything, the case law supports the opposite conclusion, namely, that the higher standard at initial commitments *decreases* the need for more stringent procedural protections in subsequent proceedings. *See Post,* 197 Wis. 2d at 326 ("The increased likelihood of accurate initial 980 commitment decisions [given all of the procedural protections] reduces the need for some of the recommitment procedures that act as a safety net in chapter 51."); *see also West,* 336 Wis. 2d 578, ¶¶ 83,

85–86, 89 (suggesting that due process allows placing the burden of proof on the committed individual who is petitioning for supervised release under WIS. STAT. ch. 980, in part because of the heightened procedural protections the individual receives at the initial commitment stage).

¶ 31. Moreover, to the extent the court in *Post* addressed the standard of proof for WIS. STAT. ch. 980 discharge decisions, the court appeared to have no constitutional concerns. The court observed, without further comment, that "the burden of proof for the state in such discharge hearings will remain clear and convincing, which comports with the level required in chapter 51 recommitment hearings." *Post*, 197 Wis. 2d at 329. While this language from *Post*, in the context of an equal protection challenge, is not on point, it provides at least some support for our conclusion that due process does not require the beyond a reasonable doubt standard at a ch. 980 discharge trial.[6]

### 3. *Talley's Other Arguments*

¶ 32. Talley's remaining arguments are largely undeveloped, poorly reasoned, or both. We will not spend time developing and addressing all of those arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider inadequately developed arguments). We will, however,

---

[6] Talley is wrong in arguing that we may disregard language in *State v. Post*, 197 Wis. 2d 279, 328–29, 541 N.W.2d 115 (1995), as "dicta." *See Zarder v. Humana Ins. Co.*, 2010 WI 35, ¶ 58, 324 Wis. 2d 325, 782 N.W.2d 682 ("[T]he court of appeals may not dismiss a statement from an opinion by [the supreme] court by concluding that it is dictum.").

discuss those for which Talley cites supporting legal authority that might seem, at least at first glance, to support his position.

¶ 33. Talley points out, correctly, that one of the *Addington* Court's reasons for rejecting the beyond a reasonable doubt standard was the Court's concern that the "uncertainties of psychiatric diagnosis" raised "a serious question as to whether a state could ever prove beyond a reasonable doubt that an individual is both mentally ill and likely to be dangerous." *Addington*, 441 U.S. at 429, 432. Using this reasoning as his spring-board, Talley seems to argue that such uncertainty is not in play when, as here, the legislature adopts the reasonable doubt standard for initial commitments. As we understand it, Talley is arguing that the legislature has changed the constitutional balance that *Addington* so carefully struck. While this argument might seem attractive initially, it fails to recognize that the Court in *Addington* specifically acknowledged the common-sense proposition that states may adopt higher standards without changing the minimum due process requirement:

> That some states have chosen—either legislatively or judicially—to adopt the criminal law standard gives no assurance that the more stringent standard of proof is needed or is even adaptable to the needs of all states. The essence of federalism is that states must be free to develop a variety of solutions to problems and not be forced into a common, uniform mold. As the substantive standards for civil commitment may vary from state to state, procedures must be allowed to vary so long as they meet the constitutional minimum. We conclude that it is unnecessary to require states to apply the strict, criminal standard.

*Id.* at 430–31 (footnote and citations omitted).

¶ 34. Talley appears to argue that *Kansas v. Hendricks*, 521 U.S. 346 (1997), supports his argument that due process requires the beyond a reasonable doubt standard at WIS. STAT. ch. 980 discharge trials. We disagree. Talley directs us to a part of the *Hendricks* Court's decision in which the Court was explaining that the Kansas law was not punitive, as evidenced in part by the fact that the law conditioned continuing commitment on continued mental abnormality and continued dangerousness:

> Furthermore, commitment under the Act is only *potentially* indefinite. The maximum amount of time an individual can be incapacitated pursuant to a single judicial proceeding is one year. § 59–29a08. If Kansas seeks to continue the detention beyond that year, a court must once again determine beyond a reasonable doubt that the detainee satisfies the same standards as required for the initial confinement. *Ibid.* This requirement again demonstrates that Kansas does not intend an individual committed pursuant to the Act to remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness.

*Id.* at 364. Talley focuses on the "must once again determine beyond a reasonable doubt" part of the quoted passage, as if it has stand-alone significance as to what standard of proof is required to satisfy due process. It does not. The Court's reference to the standard of proof for recommitment under the Kansas law is descriptive, not prescriptive.

¶ 35. In sum, we conclude, based on *Addington*, that the clear and convincing evidence standard satisfies due process at a WIS. STAT. ch. 980 discharge trial.

### Conclusion

¶ 36. For the reasons stated above, we affirm the order continuing Talley's WIS. STAT. ch. 980 commitment and the order denying Talley's motion for post-commitment relief.

*By the Court.*—Orders affirmed.