# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP950 |
| COMPLETE TITLE: | In re the commitment of Thornon F. Talley: |
| | State of Wisconsin, |
| |        Petitioner-Respondent, |
| |    v. |
| | Thornon F. Talley, |
| |        Respondent-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | March 9, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 10, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Sarah B. O'Brien |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | Abrahamson, J. joined by Bradley, A. W. J., concurring (Opinion filed); Zieger, J. joined by Gableman, J., concurring (Opinion filed) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant-petitioner, there was a brief by *David R. Karpe, Elliot M. Fink* and Karpe Law Office, Madison, and oral argument by David R. Karpe

For the petitioner-respondent the cause was argued by *Daniel J. O'Brien*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP950
(L.C. No. 2004CI01)

STATE OF WISCONSIN                    :        IN SUPREME COURT

**In re the commitment of Thornon F. Talley:**

**State of Wisconsin,**

      **Petitioner-Respondent,**

  **v.**

**Thornon F. Talley,**

      **Respondent-Appellant-Petitioner.**

**FILED**

**MAR 9, 2017**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1  REBECCA GRASSL BRADLEY, J.  In this review of a Chapter 980 petition for discharge, we consider whether "socializing more with peers," "join[ing] a fitness group," and increased communication from family members are changes from which a factfinder could determine Thornon F. Talley is no longer a sexually violent person.  We conclude that these facts, which resulted in no change to the evaluating psychologist's ultimate conclusion or overall risk assessment, are not enough to satisfy the  statutory threshold for a discharge hearing set

forth in Wis. Stat. § 980.09(2) (2011-12).[1] We affirm the unpublished court of appeals decision,[2] which affirmed the circuit court order[3] denying Talley's petition for a discharge hearing.

## I. BACKGROUND

### A. Initial Commitment and Early Discharge Petitions

¶2 Talley has been adjudicated delinquent or convicted of sexually violent offenses three times, resulting in his incarceration. As Talley's release date approached on his last offense, the State filed a petition for Chapter 980 commitment. Talley did not contest the petition, and in 2005, the circuit court ordered Talley committed "to the Department of Health and Family Services for control, care and treatment until such time as [he] is no longer a sexually violent person."

¶3 Since being committed, Talley received annual reexaminations under Wis. Stat. § 980.07, and he filed several petitions seeking discharge. Talley's 2005 and 2006 discharge petitions were dismissed at Talley's request. The circuit court

---

[1] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated. Although both parties refer to revisions to Wis. Stat. § 980.09 effective December 14, 2013, see 2013 Wis. Act. 84, neither party asks the court to decide whether the new version of § 980.09 should be applied retroactively here. Thus, we apply the 2011-12 version of the statutes, which was in effect both when Talley filed this petition and when the circuit court summarily denied it.

[2] See State v. Talley, No. 2013AP950, unpublished order, (Wis. Ct. App. Oct. 19, 2015).

[3] The Honorable Sarah B. O'Brien of Dane County presided.

terminated his 2007 discharge petition because the psychologist who conducted the reexamination of Talley never filed a report.

### B. The 2008 Discharge Petition

¶4 Talley's 2008 discharge petition was tried to a court in May 2009. At trial, the State's expert, Dr. William Schmitt, testified that Talley did not satisfy the criteria for discharge because: (1) Talley had Paraphilia Not Otherwise Specified (NOS), Exhibitionism,[4] and Antisocial Personality Disorder, each of which is a mental disorder that affected his emotional or volitional capacity and predisposed Talley to commit sexually violent acts; and (2) Talley fell into the risk category of being more likely than not to commit another sexually violent offense if discharged. Dr. Schmitt explained that, as recently as February 2009, Talley exposed his erections and talked about them with female staff; those exhibitionistic actions amounted, in essence, to "engaging in sexual behavior with a nonconsenting person." By "continu[ing] to expose himself within an institution," Talley showed ongoing "difficulty managing his sexual urges and behaviors." Dr. Schmitt opined that Talley's high psychopathy and sexual deviance, evidenced by his

---

[4] The Exhibitionism related to Talley's repeated acts of exposing his erect penis, openly masturbating, attempting to have female staff or treatment providers notice he had an erection, and attempting to engage women in discussions about his erections. His Exhibitionism during confinement resulted in repeated misconduct reports and multiple convictions for lewd and lascivious behavior.

behaviors, made him more likely than not to commit a sexually violent offense if discharged.

¶5 Talley's expert, Dr. Hollida Wakefield, agreed that Talley had Antisocial Personality Disorder and Exhibitionism, but she opined that neither disorder predisposed Talley to acts of sexual violence. She testified that Exhibitionism is not a sexually violent act, and although Antisocial Personality Disorder may cause an individual to be sexually violent, it requires the presence of both high psychopathy and sexual deviance. Dr. Wakefield agreed Talley had high psychopathy, but she did not find sexual deviance; therefore, she concluded, Talley was not more likely than not to commit a sexually violent offense.

¶6 At the end of the trial, the circuit court determined "the evidence clearly and convincingly show[ed] that Mr. Talley [was] still a sexually violent person." The circuit court made several findings about Talley: (1) he had been convicted three times of sexually violent offenses; (2) he had a mental disorder that predisposed him to committing sexually violent acts; (3) his Exhibitionism replaced sexual violence because of his confinement; (4) he "clearly enjoy[ed] exposing himself to others"; (5) he had not completed treatment; and (6) he remained a danger to others because his mental disorder made "it more likely than not that he will engage in future acts of sexual violence." Although the circuit court agreed with Dr. Wakefield that Talley's Exhibitionism is not a violent sexual act, it accepted the explanation that Exhibitionism likely replaced

4

sexual assault because Talley "ha[d] not had an opportunity to sexually assault" while confined.  Ultimately, the circuit court placed greater weight on Talley's history of sexual violence and his "antisocial conduct in custody," which was "largely sexual in nature."

## C.  The 2010 Discharge Petition

¶7  In 2010, Dr. Richard Elwood conducted Talley's annual reexamination and concluded Talley was not a sexually violent person and not more likely than not to re-offend.  He diagnosed Talley with Antisocial Personality Disorder and Borderline Personality Disorder but did not find Exhibitionism or Paraphilia NOS.  In Dr. Elwood's opinion, Exhibitionism required exposure to <u>strangers</u>, and Talley's exposures were to treatment center workers, who were not strangers to him.  Dr. Elwood also expressed doubt about Talley's continued predisposition to sexual violence, noting the record lacked sufficient evidence to prove Talley engaged in the Exhibitionism for sexual arousal purposes.  Observing that Exhibitionism is not a sexually <u>violent</u> offense, Dr. Elwood added that Talley's exposures to women he knew "may not even have been sexually motivated." Despite Talley's "moderate to very-high range" of psychopathy, Dr. Elwood could not conclude that Talley's "offenses . . . clearly establish sexual deviance."  In his static risk assessment, Dr. Elwood concluded that, "Talley poses a high risk of committing another sex offense but <u>not</u> that he poses a high risk of committing a <u>sexually violent</u> offense." The doctor's dynamic risk assessment did not alter that

5

conclusion. His report acknowledged that Talley had not made significant progress in treatment, but Dr. Elwood nevertheless concluded "Talley is <u>not</u> a sexually violent person" because "Talley would <u>not</u> more likely than not commit another sexually violent offense if he were released and given the opportunity."

¶8 Talley's 2010 discharge petition based on Dr. Elwood's report asserted a "significant change in diagnoses," which Talley contended warranted a discharge hearing. Based on a comprehensive review of the court record, the circuit court rejected Talley's request and denied the petition without a hearing. The court's review included the "dozen" evaluations dating back to Talley's initial confinement. Given Talley's consistent diagnosis "with antisocial personality disorder and borderline personality disorder," the court assigned significance to the fact that most experts found Talley predisposed to "future acts of sexual violence."

¶9 Also important to the circuit court was the fact that Dr. Elwood, like Dr. Wakefield, agreed that Talley had both personality disorders, and the circuit court had already rejected Dr. Elwood's opinion that the disorders do not make Talley a likely <u>violent</u> re-offender. As the court explained:

> All experts agree that when there is a combination of high psychopathy and sexual deviance, the risk of future acts of sexual violence is increased. At the 2009 trial Dr. Schmitt opined that Mr. Talley had both high psychopathy and sexual deviance; Dr. Wakefield was not sure that sexual deviance was present. I concluded that this combination is present in Mr. Talley, thus increasing his risk of re-offense. In the present report Dr. Elwood disagrees, concluding

6

that Mr. Talley's sex offenses do not clearly establish sexual deviance. However this is the same evidence I rejected at the discharge trial.

Because Dr. Elwood's report "contain[ed] no new evidence" and the circuit court had already "considered and rejected" the opinion that Talley's "personality disorders do not predispose him to violent sexual offending," the circuit court denied Talley's petition on the grounds that it did "not allege facts from which the court or jury might conclude that Mr. Talley's condition has changed since the date of his initial commitment so that he no longer meets the criteria for commitment."

D. The 2011 Discharge Petition

¶10 In 2011, Talley filed another petition for discharge based on Dr. Elwood's 2011 reexamination report. Dr. Elwood's risk assessment and conclusion were unchanged from his 2010 report. The circuit court nevertheless decided to hold a discharge hearing because it had been two years since Talley's last hearing, it appeared from Dr. Elwood's report that Talley had stopped publicly masturbating, and the "'science' of predicting risk has continued to evolve."

¶11 At the jury trial in January 2012, Lloyd Sinclair, the program director for the detention center where Talley resided, described the treatment program available to Talley, who was assigned to the program for patients with normal or high intelligence who have high psychopathy. The program consists of three phases. Phase One addresses self-management and how to live a responsible life in day-to-day functioning. Once a patient completes Phase One, he moves to Phase Two, which

7

focuses on the specific sex offense component of treatment. When a patient completes Phase Two, he moves to Phase Three, which combines lessons from the first two phases to ensure the patient will not re-offend when released. Sinclair testified that Talley remained in Phase One, and at times refused treatment altogether. Talley's "continue[d] . . . sexual misbehavior" "raise[d] alarms" at the treatment center. For example, Talley had repeatedly exposed his erect penis to female staff, and "if a male [came] into the room, Mr. Talley cover[ed] up." Sinclair explained that if Talley wants to be discharged he needs "to make progress [in treatment] and show that he's managing himself better."

¶12 Dr. Anthony Jurek testified for the State. He told the jury that Talley had Exhibitionism, Paraphilia NOS, and Antisocial Personality disorder with Borderline features. He testified:

- Talley has three mental disorders that impair his emotional or volitional capacity and predispose him to commit acts of sexual violence.

- "[A] person's history of sexual offenses is important because if an individual is caught for the sexual behavior and they're sanctioned for it, they should learn from that experience. It should be less likely that they engage in behavior that can cause them sanctions in the future."

- When a person "continues to offend over and over again" it indicates the person is unable "to change that

8

behavior, and it's a critical element of the diagnostic formulation but also plays into the risk assessment." Successful participation in treatment, in contrast, can suggest a reduced risk of re-offending. But Talley had not successfully participated in treatment, and he committed dozens of sexual misconduct offenses while confined.

- Talley's exhibitionistic behavior has a sexual overtone to it. He exposes himself for sexual gratification.

- "[T]he deviance underl[ying] the Exhibitionism is the same deviance that underlies the earlier sexual offenses of record."

¶13 Moreover, Dr. Jurek expected that, if no longer confined, Talley would go beyond Exhibitionism and return to committing sexually violent offenses. According to actuarial risk instruments, Talley was more likely than not to commit acts of sexual violence if discharged. In response to Dr. Elwood's opinion that Exhibitionism is inapplicable because Talley's exposures are not to strangers, Dr. Jurek explained the only reason Talley is not exposing to strangers is because he is confined: "So if he has the opportunity to expose himself to strangers, he certainly will. But where no strangers are available, he will expose himself to unsuspecting staff."

¶14 Dr. Elwood testified for Talley. On direct examination, he indicated that he diagnosed Talley with Antisocial Personality Disorder and Borderline Personality Disorder, but unlike Dr. Jurek, did not diagnose Talley with

9

Paraphilia NOS or Exhibitionism. Although Dr. Elwood explained his strict application of the DSM-IV definition for Exhibitionism as "expos[ing] one's self to unsuspecting strangers," he also acknowledged that, in light of Talley's "difficulty with sexual activities and sexual urges," "Dr. Jurek ma[d]e a good point that it may be better to make a broader interpretation of [Exhibitionism] in penal situations or when they're incarcerated" because when an individual is confined, "all of the residential staff are known to you, so there can't be a stranger."

¶15 When asked about Dr. Jurek's opinion that Talley exposed himself for sexual gratification, Dr. Elwood answered, "I just don't think I have sufficient evidence to determine" whether Talley's arousal was tied to the exposure or his self-manipulation. Dr. Elwood could not "say for sure that [Talley] was being aroused specifically by the exposing itself." When asked whether Talley was sexually deviant, Dr. Elwood responded:

> I couldn't say. I'm not saying he's not sexually deviant. I don't have evidence to say that. But I do not think I have sufficient evidence to say that he meets the usual criteria for sexual deviance as identified in the literature. . . . He certainly has some evidence of something.

¶16 Talley's attorney then asked Dr. Elwood to assess Talley's risk of engaging in future sexually violent acts: "So without that deviance finding and what you found in the actuarial tables, do you feel Mr. Talley presents a risk of sexual violence in the future? I guess [to] what degree do you feel he presents a sexual risk—a risk of sexual violence?" Dr.

10

Elwood answered, "I think I can best say I don't know." When Talley's lawyer asked, "And why is that?", Dr. Elwood responded, "I just don't think that the evidence to me is clear enough to say that." Dr. Elwood talked about Talley's risk of re-offending being "well over 51 percent." Talley's lawyer then tried to clarify:

Q [Talley's attorney:] So clearly there's a risk of reoffense, but the risk of deviance is not more likely than not in your opinion?

A [Dr. Elwood:] I think it's important to distinguish between my saying that it's not over 51 percent and saying I do not have enough evidence to say that it is over 51 percent.

Q [Talley's attorney:] Okay.

A [Dr. Elwood:] At this point I'm saying that I cannot say to a degree of professional confidence that it exceeds 51 percent likelihood of committing another sexually <u>violent</u> act.

Dr. Elwood further explained that, in the absence of evidence to "support a reasonable conclusion that the person meets the criteria, then the conclusion is they do not meet the criteria." When asked whether he thought Talley's commitment should continue, Dr. Elwood testified, "I would only say that he does not meet, in my opinion, the definition of a sexually violent person in Chapter 980."

¶17 On cross-examination, Dr. Elwood made several concessions. He acknowledged that Talley (1) has a mental disorder that predisposes him to commit acts of sexual violence; (2) falls into the "extremely high" category "on the actuarial tools for future risk to reoffend;" (3) has not completed sex

11

offender treatment; and (4) fondled himself when appearing by phone for a court proceeding, an incident that led another psychologist to opine that Talley had "extraordinarily pressing sexual urges and deficient impulse control." Importantly, Dr. Elwood confirmed he was not testifying that Talley would not commit sexually violent acts if released; rather, he simply did not believe there was "enough evidence to opine that" he would.

¶18 The jury found Talley was "still a sexually violent person," and the circuit court denied his 2011 discharge petition. Talley's motion for postcommitment relief was denied in February 2013, and the court of appeals rejected Talley's appeal in a published decision in December 2014. See State v. Talley, 2015 WI App 4, 359 Wis. 2d 522, 859 N.W.2d 155 (Ct. App. 2014).

E. The 2012 Discharge Petition

¶19 In July 2012, Talley filed the discharge petition underlying our current review. The 2012 petition relied on Dr. Elwood's annual reexamination of Talley and his report dated July 3, 2012. Dr. Elwood's 2012 report reached the same ultimate conclusion and overall risk assessment as his 2011 report: "Mr. Talley would more likely than not commit another sex offense but would not more likely than not commit another sexually violent offense"; thus, "Mr. Talley is not a sexually violent person."

¶20 There was no change between the 2011 and 2012 reports as to the facts underlying the "Static (historical) Risk Factors." Both the 2011 and 2012 reports disclose that Talley

12

scored in "the very high risk range" on the Static-99R test, putting him at "a 68% chance" of being "charged with another sex offense within 10 years of release from custody."

¶21 With respect to the "Dynamic Risk Factors," there was no change in Elwood's 2011 and 2012 reports concerning Talley's ability to self-regulate his behavior and act with regard for the consequences of his actions. Likewise, there was no change with respect to treatment completion because Talley had not completed treatment.

¶22 The only change in the 2012 report fell under the "Social & Emotional Functioning" subset of the dynamic risk factors. The note identified three particular changes: (1) Talley "socialize[d] more with peers in his treatment group"; (2) he "joined a fitness group"; and (3) "more members of his family" have been "communicating with him." Based on those changed facts, Dr. Elwood "concluded that Mr. Talley has made recent progress to reduce his risk" on the social and emotional subset of the dynamic risk factors. Talley's reported progress did not, however, change Dr. Elwood's overall risk assessment or ultimate conclusion, which remained identical to the 2011 report.

¶23 The circuit court denied Talley's petition seeking a discharge hearing because Dr. Elwood reached the same ultimate conclusion in his two previous reports—the very conclusion a

jury rejected just six months earlier.[5] Talley appealed, and the court of appeals affirmed in a summary disposition order, which concluded that the changes in the 2012 report did "not constitute a significant change from the facts that the jury rejected in the 2011 petition." We granted Talley's petition for review.

## II. DISCUSSION

### A. Standard of Review

¶24 This case involves the interpretation and application of Wis. Stat. § 980.09(2), which is a question of law we review independently, although we benefit from the decisions by the court of appeals and circuit court. See State v. Arends, 2010 WI 46, ¶13, 325 Wis. 2d 1, 784 N.W.2d 513.

### B. Analysis

¶25 Talley contends his petition alleged enough facts to warrant a discharge hearing.[6] He expresses concern that the court of appeals erroneously measured Talley's facts against a "significant" fact standard not found in the applicable statutory language. We hold that Talley's petition for discharge failed to satisfy the statutory threshold for a

---

[5] Our reference to six months shall not be construed to set any type of time parameter; rather, it is noted solely to show that, very recently, a jury rejected the same opinion Dr. Elwood gives here.

[6] A discharge hearing is "a trial on the merits of the discharge petition." State v. Arends, 2010 WI 46, ¶1, 325 Wis. 2d 1, 784 N.W.2d 513.

discharge hearing.  We also hold the court of appeals' use of the word "significant" does not alter the outcome.

1.  Statutory Standard for Discharge Hearing Not Satisfied

¶26  Wisconsin Stat. § 980.09 provides, as material:

> (1)  A committed person may petition the committing court for discharge at any time.  The court shall deny the petition under this section without a hearing unless the petition alleges facts from which the court or jury may conclude the person's condition has changed since the date of his or her initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person.

> (2) The court shall review the petition within 30 days and may hold a hearing to determine if it contains facts from which the court or jury may conclude that the person does not meet the criteria for commitment as a sexually violent person.  In determining under this subsection whether facts exist that might warrant such a conclusion, the court shall consider any current or past reports filed under s. 980.07, relevant facts in the petition and in the state's written response, arguments of counsel, and any supporting documentation provided by the person or the state.  <u>If the court determines that the petition does not contain facts from which a court or jury may conclude that the person does not meet the criteria for commitment, the court shall deny the petition.</u>  If the court determines that facts exist from which a court or jury could conclude the person does not meet criteria for commitment the court shall set the matter for hearing.

(Emphasis added.)

¶27  In <u>State v. Arends</u>, this court described the "two-step process" for determining whether a person committed under Wis. Stat. ch. 980 (2005-06) is entitled to a discharge hearing on a petition.  <u>Arends</u>, 325 Wis. 2d 1, ¶¶3-5.  The first step is a "paper review of the petition only, including its attachments"

15

under Wis. Stat. § 980.09(1), and if the circuit court concludes the petition sufficiently "alleges facts from which a reasonable trier of fact could conclude that the petitioner does not meet the criteria for commitment as a sexually violent person" the circuit court proceeds to the second step, a review under Wis. Stat. § 980.09(2). Arends, 325 Wis. 2d 1, ¶¶3-5. The second step involves an expanded review of the petition, with "all past and current reports filed under [Wis. Stat.] § 980.07," and other supporting documentation in the record, to determine if these materials "contain any facts from which a reasonable trier of fact could conclude that the petitioner does not meet the criteria for commitment as a sexually violent person."[7] Arends, 325 Wis. 2d 1, ¶5.

¶28 Here, the record suggests, and the parties concede, the circuit court's decision denying Talley a discharge hearing involved a review under Wis. Stat. § 980.09(2), rather than § 980.09(1). The standard the legislature pronounced in § 980.09(2) is straightforward: After considering all of the materials in the record, the court "shall deny the petition" if it "determines that the petition does not contain facts from which a court or jury may conclude that the person does not meet the criteria for commitment." The circuit court held that

_____

[7] Wisconsin Stat. § 980.09(2) uses the terms "could" and "may" interchangeably. See Arends, 325 Wis. 2d 1, ¶¶37 n.20, 41, 43. As pointed out in Arends, the "slightly different iterations" are "non-substantive word-choice variances." Id., ¶37 n.20.

16

Talley's 2012 petition did not warrant a discharge hearing because it contained the same ultimate conclusion and overall risk assessment rejected by a jury six months earlier. The court found Talley's three self-reported changes would not lead a factfinder to conclude Talley is no longer sexually violent. We agree with the circuit court's assessment.[8]

¶29 The only new facts in Talley's 2012 petition are located under the "Social & Emotional Functioning" subset of the dynamic risk factors section of Dr. Elwood's report. Talley reported that he was "socializing more with peers," he "joined a fitness group," and "more members of his family [] recently began communicating with him." Dr. Elwood labeled these facts "recent progress to reduce risk" specifically on the social and emotional functioning component, but Dr. Elwood's overall risk assessment and ultimate conclusion remained unchanged since his 2011 report. As noted, a jury already rejected that conclusion in January 2012.

¶30 Our review thus focuses on whether the 2012 petition's three new facts, when considered together with our comprehensive review of the entire record——including every psychological examination report, every treatment report, and the transcripts

---

[8] Talley argues the circuit court failed to review all the past and current reports in the record and asks us to remand so the circuit court may do so. Although the record is not entirely clear in this regard, there is no need for the remand Talley requests. We conducted a comprehensive review of the evidence, which we may do, see Arends, 325 Wis. 2d 1, ¶48, and reached the same conclusion as the circuit court.

from Talley's 2009 bench trial and 2012 jury trial——lead to a determination that a reasonable factfinder "may [or could] conclude" Talley is no longer a sexually violent person.  We conclude these three facts in the 2012 reexamination report do not satisfy the statutory standard because no reasonable jury could find that they may mean Talley is no longer a sexually violent person——particularly when these facts did not alter Dr. Elwood's prior ultimate conclusion or overall risk assessment, and where a jury just six months earlier rejected Talley's claim that he is no longer a sexually violent person.

¶31 These facts do not impact any of the three criteria for commitment, which require proof that:  (1) Talley was convicted of a sexually violent offense; (2) he currently suffers from a mental disorder that affects his emotional or volitional capacity, making him predisposed to commit acts of sexual violence; and (3) the mental disorder makes it more likely than not that Talley will engage in more acts of sexual violence.  See Wis. Stat. §§ 980.01(7), 980.02(2), 980.05(3)(a); see also Wis. JI—Civil 2506 (2015).  Criteria (1) and (2) are undisputed; the only disagreement centers on criterion (3).

¶32 Nothing in the record suggests that the advent of the three facts proffered here may (or could) cause a factfinder to now conclude that Talley's mental illness will no longer make it more likely than not that he will commit a sexually violent offense.  At the 2012 trial, Dr. Elwood explained that he resolved the third factor in favor of Talley only because he did not have enough information to decide one way or the other;

18

unsurprisingly, this testimony failed to convince the jury that Talley overcame his predisposition to commit sexually violent acts. Since the jury's verdict, Talley reported that he is "socializing more with peers," he "joined a fitness group," and "more members of his family [] recently began communicating with him." Critically, these facts did not alter Dr. Elwood's recently rejected assessment of Talley's risk of re-offending.

¶33 We are not convinced that Talley's three reported facts——which do not relate to his propensity to commit sexually violent acts——may result in a jury or court making a different determination, absent any change in diagnosis, overall risk assessment, or ultimate conclusion. In eleven years, Talley has not successfully completed treatment; he has not even begun sexual-offender-specific treatment because he has not progressed beyond the first phase of the treatment program. He continues to engage in sexual misbehavior and Exhibitionism, which all but two of the psychologists involved here opined reflects a confined person's substitute for sexually violent acts.

¶34 Finally, case law supports the conclusion that a person committed under Chapter 980 is not entitled to a discharge hearing where the current petition contains the same ultimate conclusion and overall risk assessment a trier of fact previously rejected. See State v. Schulpius, 2012 WI App 134, ¶4, ¶¶34-35, 345 Wis. 2d 351, 825 N.W.2d 311 ("[T]he petitioner must also produce some new evidence, not previously considered by a trier of fact, which demonstrates that he does not meet the criteria for commitment under Wis. Stat. ch. 980."); State v.

19

Kruse, 2006 WI App 179, ¶35, 296 Wis. 2d 130, 722 N.W.2d 742 ("[A]n expert's opinion must depend upon something more than facts, professional knowledge, or research that was considered by an expert testifying in a prior proceeding that determined the person to be sexually violent." (quoting State v. Combs, 2006 WI App 137, ¶¶32-33, 295 Wis. 2d 457, 720 N.W.2d 684)). "An expert's opinion that is not based on some new fact, new professional knowledge, or new research is not sufficient for a new discharge hearing under § 980.09(2)." Schulpius, 345 Wis. 2d 351, ¶35. The court of appeals reached this conclusion in Schulpius, Kruse, and Combs because "it serves the purpose of ensuring that a person who is not sexually violent does not continue in commitment, while avoiding continual re-litigation of issues." Combs, 295 Wis. 2d 457, ¶33.

¶35 Talley's 2012 petition is based on the same information that a jury previously rejected, plus three new social facts that did not move Dr. Elwood to alter his opinion and are not the type of facts that would demonstrate Talley is no longer a sexually violent person. The three new facts presented in Talley's petition, therefore, do not merit a discharge hearing. Dr. Elwood's ultimate conclusion and overall risk assessment are exactly the same as those the jury considered in finding Talley remains a sexually violent person. Talley's increased socialization, family communication, and fitness pursuits do not elevate the petition to one "from which a court or jury may [or could] conclude that the person does not meet the criteria for commitment." See Wis. Stat. § 980.09(2).

20

When new facts do not change the doctor's ultimate conclusion or overall risk assessment and that doctor's conclusion has already been rejected by a jury, we are not convinced the three additional facts asserted here could result in a jury finding in the petitioner's favor. Accordingly, the circuit court correctly complied with the statute's directive that it "shall deny" the petition without a hearing.

### 2. Court of Appeals' Use of "Significant"

¶36 Talley expresses concern about the court of appeals' use of the word "significant" in its opinion. The word "significant" is not used in the statute, but it is a term frequently used throughout the record in this case. Talley used it in submitting his 2010 Petition, asserting that Dr. Elwood's report contained a "<u>significant</u> change in diagnoses." The term was used by the psychologists and treatment providers in describing Talley's progress in treatment. For example, "Talley is not considered to have made <u>significant</u> progress in treatment." Wisconsin Stat. § 980.09 does not use the term "significant" in setting the standard required to warrant a discharge hearing.

¶37 Preferably, the court of appeals should have measured Talley's petition against the actual text of the statute. The court of appeals' use of the term "significant," however, does not alter the outcome of this case because our application of the language of the statutory standard results in the same conclusion reached by the court of appeals. The facts contained in Talley's 2012 petition based on Dr. Elwood's report do not

21

satisfy the statutory standard because "socializing more with peers," "join[ing] a fitness group," and increased communication from family members are not "facts from which a court or jury may conclude that the person does not meet the criteria for commitment."

### 3. Adding Adjectives to Statutory Standard

¶38 At oral argument in this case, the parties discussed whether the "facts" under the statute must be "material" or "of consequence" in order to trigger a discharge hearing. The legislature did not use these terms, and we will not modify the 2011-12 Wisconsin Statutes to insert them.[9] Adding adjectives to the statute is unnecessary to resolve this case. We simply apply the statutory language the legislature chose and conclude that the facts proffered here are not "facts from which a court or jury may conclude that the person does not meet the criteria for commitment." Wis. Stat. § 980.09(2). Therefore, the statutory standard was not satisfied and no discharge hearing was required.

### III. CONCLUSION

¶39 Talley's 2012 petition for discharge differed in only one respect from his 2011 petition: Dr. Elwood noted some "progress to reduce risk" under the "Social & Emotional

---

[9] As explained supra, note 1, in 2013 the legislature revised several portions of Chapter 980. Those changes included an adjustment to the standard in Wis. Stat. § 980.09. The new statutory language in subsection (2) allows the court to assess whether the person's condition has "sufficiently changed."

Functioning" component of the dynamic risk factors because Talley reported he was "socializing more with peers," he had "join[ed] a fitness group," and "more members of his family [] recently began communicating with him." Despite these changes, Dr. Elwood's overall risk assessment and ultimate conclusion remained unchanged since his 2011 report, which the jury rejected six months earlier when it found that Talley was still a sexually violent person.

¶40 We conclude that a factfinder could not determine, based on these three facts, that Talley no longer met the criteria for a sexually violent person. Thus, Talley's 2012 petition does not satisfy the statutory standard needed to obtain a discharge hearing. Further, although the term "significant" does not appear in the language of that statute, its use by the court of appeals in the summary disposition order does not alter the outcome of this case. Both the court of appeals and the circuit court correctly ruled that Talley's 2012 petition did not "contain facts from which a court or jury may conclude that" Talley "does not meet the criteria for commitment," Wis. Stat. § 980.09(2); therefore, the circuit

court appropriately denied Talley's 2012 petition without holding a discharge hearing.[10]

*By the Court.*—The decision of the court of appeals is affirmed.

---

[10] This opinion cannot and should not be interpreted as the concurrences speculate. The opinion does not foreclose Talley from satisfying the statutory threshold required for a discharge hearing in a future petition where a psychologist finds he is no longer a sexually violent person so long as his petition satisfies the new statutory threshold contained in § 980.09(2)(2013-14). See supra n.9. In our current review, as required by the 2011-12 version of § 980.09(2), we considered whether Talley's three new facts and all of the psychological reports in the record may lead a jury to conclude Talley was no longer sexually violent. We concluded the three new facts, which do not impact the three criteria for commitment, see supra, ¶31, together with Dr. Elwood's report (that was essentially identical to the previous year's report which a jury recently rejected), could not lead a jury to find in Talley's favor. Thus, Talley's petition did not warrant a discharge hearing.

Also, the opinion does not weigh evidence; it considers whether all the materials in this record, listed in Wis. Stat. § 980.09(2), may lead a jury to find Talley is no longer a sexually violent person. That is what the 2011-12 version of § 980.09(2) required us to do.

¶41 SHIRLEY S. ABRAHAMSON, J. *(concurring).* I too would affirm the decision of the court of appeals. I do not, however, join the opinion of the court because it strays too far from the text of Wis. Stat. § 980.09(2) and fails to provide a practical, sound interpretation and application of the statutory language "facts from which a circuit court could conclude that the petitioner does not meet the criteria for commitment as a sexually violent person." (Emphasis added.) Unlike the majority, I conclude that the "facts" must be relevant facts of consequence to the issue at hand. Not just any old facts will do.

¶42 Here are the words of Wis. Stat. § 980.09(2) (2011-12) (emphasis added):

> (2) The court shall review the petition within 30 days and may hold a hearing to determine if it contains facts from which the court or jury may conclude that the person does not meet the criteria for commitment as a sexually violent person. In determining under this subsection whether facts exist that might warrant such a conclusion, the court shall consider any current or past reports filed under s. 980.07, relevant facts in the petition and in the state's written response, arguments of counsel, and any supporting documentation provided by the person or the state. If the court determines that the petition does not contain facts from which a court or jury may conclude that the person does not meet the criteria for commitment, the court shall deny the petition. If the court determines that facts exist from which a court or jury could conclude the person does not meet criteria for commitment the court shall set the matter for hearing.

¶43 It is important to recognize that Wis. Stat. § 980.09(2) (2011-12) was revised in 2013 (effective Dec. 14,

1

2013).[1] Because of the revision, the majority opinion is limited to interpreting and applying the pre-2013 statute. See majority op., ¶1 n.1. The majority opinion interprets the 2011-12 version of Wis. Stat. § 980.09(2) and does not govern the interpretation and application of the revised 2013 statute. I address the 2011-12 version of Wis. Stat. § 980.09(2), as does the majority opinion.

---

[1] The statute was amended in 2013 to read as follows (emphasis added):

(2) In reviewing the petition, the court may hold a hearing to determine if the person's condition has sufficiently changed such that a court or jury would likely conclude the person no longer meets the criteria for commitment as a sexually violent person. In determining under this subsection whether the person's condition has sufficiently changed such that a court or jury would likely conclude that the person no longer meets the criteria for commitment, the court may consider the record, including evidence introduced at the initial commitment trial or the most recent trial on a petition for discharge, any current or past reports filed under s. 980.07, relevant facts in the petition and in the state's written response, arguments of counsel, and any supporting documentation provided by the person or the state. If the court determines that the record does not contain facts from which a court or jury would likely conclude that the person no longer meets the criteria for commitment, the court shall deny the petition. If the court determines that the record contains facts from which a court or jury would likely conclude the person no longer meets the criteria for commitment, the court shall set the matter for trial.

For two recent court of appeals cases applying the amended statute, see In re Commitment of David Hager, Jr., No.2015AP330, unpublished slip op. (Wis. Ct. App. Jan. 24, 2017) (recommended for publication); In re Commitment of Howard Carter, 2015AP1311, unpublished slip op. (Wis. Ct. App. Jan. 24, 2017) (recommended for publication).

2

¶44 Under Wis. Stat. § 980.09(2), the court decides as a matter of law, independently of the circuit court and court of appeals, whether facts exist from which a reasonable fact-finder may conclude that the petitioner does or does not meet the criteria for commitment.[2]

¶45 The majority opinion too often ties the "facts" in the instant petition to the psychologist's ultimate conclusion or overall risk assessment, which remained the same since the psychologist's last report, or to a jury's recent denial of Talley's prior petition. See majority op., ¶¶1, 29, 30, 32-35, 39.

¶46 A fact-finder is not bound by the psychologist's ultimate conclusion or overall risk assessment or the last jury's verdict; a fact-finder is bound by the "facts." True, the psychologist's unchanged conclusion may be probative of whether the petitioner still meets the commitment criteria. But, to the extent that the majority opinion can be interpreted as requiring a change in the psychologist's conclusions in order for a court to rule in favor of a discharge hearing, the opinion goes too far.[3]

---

[2] The facts alleged are accepted as true. The question of law presented to this court is the interpretation and application of Wis. Stat. § 980.09(2) to undisputed facts. State v. Arends, 2010 WI 46, ¶13, 325 Wis. 2d 1, 784 N.W.2d 513.

[3] "[T]he presence of evidence unfavorable to the petitioner——a re-examination report reaching a conclusion that the petitioner was still more likely than not to sexually reoffend, for example——does not negate the favorable facts upon which a trier of fact might reasonably rely." Arends, 325 Wis. 2d 1, ¶40.

3

¶47 In addition to this misstep, the majority makes no attempt to interpret and apply the statutory word "facts."

¶48 Unfortunately, the majority opinion refuses to limit the facts required in the petition under Wis. Stat. § 980.09(2) to "significant" facts or "material" facts. According to the majority, "[a]dding adjectives to the statute is unnecessary to resolve this case." Majority op., ¶38.

¶49 This refusal is disingenuous. The majority opinion readily accepts prior case law adding the word "new" to Wis. Stat. § 980.09(2). See majority op., ¶¶29, 30, 34, 35. Also, the majority opinion seems to dismiss as "facts" Talley's self-reported facts. See majority op., ¶¶28, 32-33. The majority opinion explains that it could not determine on the basis of the facts that Talley was no longer a sexually violent person. See majority op., ¶¶36, 37, 40. The majority reaches this conclusion without an explanation. Are readers supposed to infer that Talley's self-reported facts are to be ignored?

¶50 In contrast to the majority opinion, the court of appeals examined the petition for "significant" facts. Similarly, the State asserts that the facts in the petition must be "material" facts and facts "of consequence." See majority op., ¶¶36, 38. But the majority opinion refuses to read the word "facts" as meaning "significant" or "material" facts because, according to the majority opinion, the legislature did not use the words "significant" or "material." See majority op., ¶38.

4

¶51 The majority opinion's reasoning for refusing to interpret the statutory word "facts" as "significant" or "material" is specious. The applicable statute, Wis. Stat. § 980.09(2), explicitly requires the court to consider "relevant facts in the petition."[4] Thus, the very text of § 980.09(2) requires the facts in the petition to be "relevant" to the contested issue, that is, facts that relate to whether the petitioner does or does not meet the criteria for commitment as a sexually violent person.

¶52 Furthermore, Wis. Stat. § 980.09(2)'s use of the word "facts" integrally incorporates the concept of relevancy.[5] The Wisconsin Rules of Evidence define "facts" as facts of consequence to the determination of the action.[6] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Wis. Stat. § 904.01.

---

[4] See also Arends, 325 Wis. 2d 1, ¶32 ("the court . . . is required to examine . . . relevant facts in the petition and in the State's written response.").

[5] "[A]ny fact which tends to prove a material issue is relevant, even though it is only a link in the chain of facts which must be proved to make the proposition at issue appear more or less probable. Relevancy is not determined by resemblance to, but by the connection with, other facts." Oseman v. State, 32 Wis. 2d 523, 526, 145 N.W.2d 766 (1966) (quoting 1 Ronald A. Anderson, Wharton's Criminal Evidence § 148, at 284-87 (12th ed. 1955) (quoted in Judicial Council Committee's Note, 1974, Wis. Stat. Ann. § 904.01 (West 2000).

[6] "Chapters 901 to 911 govern proceedings in the courts of the state of Wisconsin except as provided in ss. 911.01 and 972.11." Wis. Stat. § 901.01.

¶53 The State uses the words "material" and "facts of consequence" rather than the word "relevant" to describe the statutory word "facts." These words, "relevant" and "material," have historically been used interchangeably.[7] The following definitions of "relevant" and "material," appearing in McCormick, Evidence (hornbook series), § 152, at 315-16, were adopted by the court in State v. Becker, 51 Wis. 2d 659, 666-67, 188 N.W.2d 449 (1971):

> In the courtroom the terms relevancy and materiality are often used interchangeably, but materiality in its more precise meaning looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to prove a proposition which is not a matter in issue nor probative of a matter in issue, the evidence is properly said to be immaterial. * * * Relevancy in logic is the tendency of evidence to establish a proposition which it is offered to prove. Relevancy, as employed by judges and lawyers, is the tendency of the evidence to establish a material proposition.[8]

---

[7] See 10 Ted M. Warshafsky & Frank T. Crivello II, Wisconsin Practice Series: Trial Handbook for Wisconsin Lawyers § 13.02 (3d ed. 2016) ("[A]lthough the distinction [between relevance and materiality] is one of traditional logic and historical interest, it has little substantive meaning in modern trial practice.").

[8] The Wisconsin Rules of Evidence do not refer to the concept of materiality except in the Comment to Wis. Stat. § 904.01. See Wisconsin Rules of Evidence, 59 Wis. 2d R1, R67; Judicial Council Committee's Note, 1974, Wis. Stat. Ann. § 904.01 (West 2000) (the Judicial Council Committee's Note states that McCormick's view of the distinction between materiality and relevancy is imported into Wis. Stat. § 904.01 by the phrase "that is of consequence to the determination of the action.").

(continued)

6

¶54 I agree with the State that the word "facts" in Wis. Stat. § 980.09(2) means "material facts," or if the reader prefers, "relevant facts."

¶55 I conclude as a matter of law that the "facts" upon which Talley relies are on the whole short-lived (the facts occurred within the last six months), and considering the entire record appear at this time minimal and inconsequential, and are not facts from which a reasonable fact-finder may conclude that Talley does not meet the criteria for commitment.

¶56 The majority opinion will take litigants and circuit courts off course. It overlooks the meaning of the statutory word "facts" and fails to provide a practical, sound meaning of the word "facts" used in Wis. Stat. § 980.09(2).

¶57 For the reasons set forth, I agree that the decision of the court of appeals should be affirmed, but I do not join the majority opinion.

¶58 I am authorized to state that Justice ANN WALSH BRADLEY joins this concurring opinion.

---

For a more recent discussion of relevancy and materiality, see 1 McCormick on Evidence § 185, at 994-95 (Kenneth S. Broun ed., 7th ed. 2013) ("There are two components to relevant evidence: materiality and probative value. Materiality concerns the fit between the evidence and the case. It looks to the relation between the propositions that the evidence is offered to prove and the issues in the case. . . . The second aspect of relevance is probative value, the tendency of evidence to establish the proposition that it is offered to prove.")

7

¶59 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* Like the court, I conclude that Talley is not entitled to a discharge hearing. While I agree with much of the court's analysis, I write to clarify the opinion and join the opinion only if it is interpreted consistent with this concurrence. In this concurrence, I will point out two concerns that I have with the court's writing and why certain language of the opinion ought not be misinterpreted.

¶60 First, the court's opinion could be read to suggest that when a committed person relies in a petition for discharge on the opinion of an evaluating psychologist that has already been rejected by a trier of fact, only an appropriate change to the evaluating psychologist's "ultimate conclusion or overall risk assessment" can entitle that person to a discharge hearing under Wis. Stat. § 980.09. I cannot accept such an interpretation because doing so would be to write a limitation in the statute. To be clear, the plain language of the relevant statute can entitle a person to a discharge hearing if the petition presents "facts from which the court or jury may conclude that the person does not meet the criteria for commitment as a sexually violent person." Wis. Stat. § 980.09(2).

¶61 If the court's opinion were read to require what it might seem to suggest, committed persons like Talley would be required to show more than the statute requires. Dr. Elwood has already concluded that Talley would <u>not</u> more likely than not

commit another sexually violent offense and is <u>not</u> a sexually violent person. In the future, new facts strongly suggesting that Talley does not meet the criteria for commitment may develop. These facts, logically, might not change Dr. Elwood's conclusion that Talley would not more likely than not commit another sexually violent offense and is not a sexually violent person. I am concerned that the court's opinion could be read to preclude a discharge hearing under those circumstances, merely because Dr. Elwood's "ultimate conclusion or overall risk assessment" had not changed. While a change to an evaluating psychologist's "ultimate conclusion or overall risk assessment" is certainly relevant to the question of whether Wis. Stat. § 980.09(2) has been met, such a change is not a necessary condition of fulfillment of the statutory threshold.

¶62 Second, the court's opinion ought not be read to weigh evidence unfavorable to Talley as part of its inquiry into whether Talley is entitled to a discharge hearing under Wis. Stat. § 980.09(2), contrary to case law. Our discussion in <u>Arends</u> explains the proper analysis:

> We reject the State's argument that the circuit court may weigh evidence favoring the petitioner directly against evidence disfavoring the petitioner. This is impermissible because the standard is not whether the evidence more heavily favors the petitioner, but whether the enumerated items contain facts that would allow a factfinder to grant relief for the petitioner. If the enumerated items do contain such facts, the presence of evidence unfavorable to the petitioner——a re-examination report reaching a conclusion that the petitioner was still more likely than not to sexually reoffend, for example——does not negate the favorable facts upon which a trier of fact might reasonably rely.

2

State v. Arends, 2010 WI 46, ¶40, 325 Wis. 2d 1, 784 N.W.2d 513 (footnote omitted).

¶63 I doubt the court intends either of the potential defects I have identified. However, the possibility of confusion remains. Thus, for the foregoing reasons, I respectfully concur and write to clarify these areas of concern so that the opinion of the court is not misinterpreted.

¶64 I am authorized to state that Justice MICHAEL J. GABLEMAN joins this concurrence.