**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 1, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP1181**

Cir. Ct. No. 2007CI5

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

IN RE THE COMMITMENT OF DAVID WILLIE MCLEMORE:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

DAVID WILLIE MCLEMORE,

      RESPONDENT-APPELLANT.

      APPEAL from an order of the circuit court for Milwaukee County: MICHELLE ACKERMAN HAVAS, Judge. *Affirmed*.

      Before Blanchard, Dugan and Donald, JJ.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  David Willie McLemore appeals an order denying his petition for discharge from his commitment as a sexually violent person under WIS. STAT. ch. 980 (2017-18).[1]  Because the circuit court properly denied McLemore's petition without granting him a discharge trial, we affirm.

## I.  BACKGROUND

¶2     McLemore was convicted and sentenced for a series of sexually violent offenses between 1979 and 1989.  Before he reached his mandatory release date in 2007, the State petitioned to have him committed under WIS. STAT. ch. 980 as a sexually violent person.  The State prevailed, and the circuit court committed McLemore for treatment.

### A.     McLemore's 2015 Discharge Trial.

¶3     McLemore has petitioned for discharge several times.  In 2015, when he was fifty-seven years old, the circuit court held a discharge trial.  At trial, Dr. Sharon Kelley was called by the State and Dr. Courtney Endres was called by McLemore.

¶4     Dr. Kelley testified that McLemore suffered from antisocial personality disorder, which was one of the factors that predisposed him to engage in acts of sexual violence.  She also testified that McLemore was more likely than not to commit a sexually violent offense if released.

¶5     Dr. Endres opined that McLemore no longer met the criteria to be committed under WIS. STAT. ch. 980.  She explained that McLemore no longer met

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

the diagnostic criteria for antisocial personality disorder and assessed him as a six or a seven on the Static Risk Assessment 99 (Static-99R), an actuarial instrument used to estimate risk for sexual recidivism. Based on that assessment, Dr. Endres assigned McLemore a 14.7% to 25.5% risk of recidivism over a five-year follow-up period, depending on the sample group used as a reference. Additionally, Dr. Endres noted that a person's score using the Static-99R begins to decline after turning forty years old and "then once they hit [sixty], they are losing three points because we know that people's risk to recidivate goes down as they get older, sexually in particular."

¶6      The circuit court determined that McLemore remained a sexually violent person and denied the petition for discharge. McLemore appealed and this court affirmed. *See State v. McLemore*, No. 2017AP803, unpublished slip op. (WI App Mar. 15, 2018).

### B.      *McLemore's 2018 Petition for Discharge.*

¶7      This appeal arises out of a petition for discharge that McLemore filed in 2018. The petition alleged that McLemore was entitled to discharge because there was new information—namely, an evaluation performed by Dr. Diane Lytton—showing that McLemore no longer met the criteria for continued commitment. Dr. Lytton opined that McLemore was no longer a sexually violent person due to changes since the 2015 trial. These changes depended in part on his aging, including the fact that he had turned sixty.

¶8      Dr. Lytton explained that one consequence of his turning sixty was that it meant that his Static-99R score automatically dropped by three points, which resulted in a score of five, which translated to a 15% recidivism rate after five years.

3

¶9      Another consequence of his aging, Dr. Lytton further opined, was that McLemore did not meet the diagnosis for antisocial personality disorder. She explained that as individuals get older they eventually tend to age out of the sort of antisocial behavior that is typical of the disorder. Dr. Lytton further opined that antisocial personality disorder was not a qualifying mental disorder under WIS. STAT. ch. 980.[2]

¶10     The State argued in response that McLemore was not entitled to a discharge trial. Following a hearing, the circuit court denied McLemore's petition. The circuit court determined that the substance of Dr. Endres's opinion from 2015 was largely the same as the substance of Dr. Lytton's opinion, and as a result, there was no basis in the record on which a court or jury would likely conclude that McLemore no longer met the criteria for commitment.

## II. DISCUSSION

¶11     "A committed person may petition the committing court for discharge at any time." WIS. STAT. § 980.09(1). The circuit court "shall deny the petition" without a hearing unless it "alleges facts from which the court or jury would likely conclude the person's condition has changed since the most recent order denying a petition for discharge after a hearing on the merits … so that the person no longer meets the criteria for commitment as a sexually violent person." *See id.* "If the court determines that the record contains facts from which a court or jury would

---

[2] Dr. Lytton additionally utilized Bayes' Rule, "which uses probability math to give a quantifiable formula for determining risk to reoffend." The circuit court rejected McLemore's contention that the use of Bayes' Rule was sufficient to warrant a new trial, and McLemore does not pursue that facet of the circuit court's ruling on appeal. Consequently, we do not discuss it further.

likely conclude the person no longer meets the criteria for commitment, the court shall set the matter for trial." Sec. 980.09(2).

¶12 We independently review the circuit court's determination of whether the statutory criteria for a discharge trial have been met. *See* ***State v. Hager***, 2018 WI 40, ¶19, 381 Wis. 2d 74, 911 N.W.2d 17 (plurality opinion); *see also* ***id.***, ¶¶66, 77 (Kelly, J. concurring) (joining plurality opinion "except with respect to its conclusion that [WIS. STAT.] § 980.09(2) prevents the [circuit] court from weighing conflicting evidence."); ***State v. Talley***, 2017 WI 21, ¶24, 373 Wis. 2d 610, 891 N.W.2d 390. Under § 980.09(1) and (2) the most recent evidentiary hearing at which the State proved that the person is sexually violent becomes the starting point for assessing whether the record contains facts from which a factfinder would likely conclude that the person "no longer" meets the criteria for commitment. A petition is not sufficient when it "contains the same ultimate conclusion and overall risk assessment a trier of fact previously rejected." *See* ***Talley***, 373 Wis. 2d 610, ¶34.

¶13 McLemore contends that the process of aging prompted changes in his condition. Specifically, he asserts that, because he reached the age of sixty since the 2015 trial, this reduced his risk to reoffend. Additionally, he argues that due to the aging process, he no longer meets the diagnostic criteria for antisocial personality disorder. According to McLemore, these two changes—"[t]aken together"—make it likely that a jury would conclude he is no longer a sexually violent person.

¶14 When McLemore turned sixty, his Static-99R score dropped. However, the State argues that, if the passage of time alone constituted a change warranting a new trial, then WIS. STAT. § 980.09(2) would be meaningless for every person who simply passes the threshold age, since all could argue that the automatic

change in score is sufficient to warrant a new trial. McLemore concedes this point by failing to reply to the State's argument. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failing to refute proposition asserted in response brief may be taken as concession). Further, we agree that this is not a reasonable interpretation of § 980.09(2).

¶15 Moreover, as previously noted, McLemore was fifty-seven years old at his last discharge trial in 2015 and Dr. Endres scored him at either a six or a seven, which correlated to a range of recidivism between 14.7% and 25.5% over five years, depending on the sample group used as a reference. In the more recent report, Dr. Lytton has scored him as a five, which she stated correlates to a 15% risk of recidivism over five years. When one examines the low end of Dr. Endres's 2015 assessment and Dr. Lytton's more recent opinion that McLemore's risk of recidivism is somewhere near the 15% range, both doctors arrived at similar conclusions and both determined that McLemore is well below the legal threshold of "more likely than not" to commit a sexually violent offense. *See* WIS. STAT. § 980.01(1m), (7). Consequently, it is not likely that a factfinder would conclude there has been a change in McLemore's condition since the 2015 trial such that he no longer meets the criteria for commitment based on his Static-99R score reduction, which according to the experts resulted solely from the fact that he had passed the age of sixty.

¶16 Turning to the other condition that has allegedly changed since the last trial, McLemore argues that his symptoms of antisocial personality disorder have lessened to the point that he no longer qualifies for that diagnosis. In her report, Dr. Lytton acknowledged that "McLemore has been diagnosed with antisocial personality disorder" and that "[h]e continues to exhibit some behaviors related to the disorder" but opined that antisocial personality disorder does not clearly support

eligibility for commitment. Dr. Lytton additionally explained, that due to the passage of time, McLemore's symptoms of antisocial personality disorder "seem to be declining similar to many individuals so diagnosed." On this topic, Dr. Endres testified in 2015 that McLemore once had antisocial personality disorder, but had aged out of the diagnosis.

¶17 We agree with the State that both Dr. Lytton and Dr. Endres "came to the identical conclusion that, at the time of their evaluation[s], McLemore was no longer appropriate for commitment because he did not have a qualifying mental disorder." It is not likely that a factfinder would conclude from this that there has been a change in McLemore's condition such that he no longer meets the criteria for commitment.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.